Nathan Gethner, Defendant in Error, v. A. D. Salomon et al., Plaintiffs in Error.

Gen. No. 15,231.

REVENUE—*effect of governmental seizure of cigars.* If cigars are offered for sale contrary to the revenue laws of the United States a right of forfeiture and seizure by the government arises and if the cigars are actually sold pursuant to such offer a subsequent seizure by the government operates to vest the title of the government thereby acquired as of the time of the offer of sale and to divest the paper title made by the sale pursuant to the offer.

Trover. Error to the Municipal Court of Chicago; the Hon. THOMAS B. LANTRY, Judge, presiding. Heard in this court at the March term, 1909. Reversed. Opinion filed June 30, 1910. Rehearing denied October 17, 1910.

CHILDS & CHILDS, for plaintiff in error.

BERNARD J. BROWN, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action in trover brought by plaintiff, Nathan Gethner, doing business as Gethner Brothers, to recover the alleged value of a quantity of cigars claimed to have been unlawfully converted by defendants. The cigars in question were manufactured by one Ben Meyer at his factory, No. 1695 First District of Illinois. There were about twenty-seven or twenty-nine thousand of them and they were packed in boxes bearing labels which indicated they had been made and the revenue stamp cancelled in the Third District of Iowa. The boxes bore a warning notice as follows:

"Factory No. 76,
State of Iowa.
Notice: The Manufacturer of the cigars herein contained has complied with all the requirements of law. Every person is cautioned not to use either this box for cigars again or remove the contents of this box without destroying said stamp under the penalties provided by law in such cases."

Each box had burned into the wood, "Factory No. 76, Third District, Iowa." Meyer testifies that plaintiff took a few of these boxes of cigars and tried to sell them and a few days later bought from Meyer 22,000 of them, which Meyer delivered to him by an expressman. · Gethner tried to sell the cigars and did sell and deliver some, which however the purchasers refused to retain and returned to plaintiff without paying for them. About this time the cigars were seized by the Collector of Internal Revenue for the First District of Illinois, because they were illegally marked and branded. The fact that they were so illegally marked is not disputed. Meyer, the manufacturer of the cigars, was arrested by the authorities of the United States. A compromise was finally effected by one Salomon acting as agent for and in behalf of Meyer, who paid the Government in settlement the sum of two hundred dollars with costs and expenses. On the 10th of May, 1907, Meyer received notice of the Government's acceptance of the compromise. A few days later the boxes of cigars were correctly marked, inspected by the officials of the Government and Meyer was notified to go to Salomon's office and get them. Before he did this the defendant instituted a suit in attachment against Meyer and caused a writ of attachment to be served on Salomon as garnishee. Upon order of the Court in the attachment suit the cigars were afterward on June 15, 1907, turned over to the defendant herein.

It is said by plaintiff's attorney that the only proposition involved in the case in the one stated by defendant as follows: "At the time Gethner Brothers claim to have purchased and acquired possession of the cigars in question said cigars were not the subject either of legal sale or legal delivery, and they could acquire neither the legal title nor legal possession thereof." In this contention we concur. Section 3397, vol. 3, Federal Statutes Annotated, p. 750, provides that whenever cigars "are removed from any manufactory or place where cigars are made  *  *  *  without properly affixing thereon and cancelling the stamp denoting the tax on the same *  *  *  they shall be forfeited to the United States," and

if any "are sold or offered for sale not properly boxed and stamped, they shall be" so forfeited. The federal statutes also provide that property taken under authority of any revenue law of the United States, as were the cigars in question, "shall be irrepleviable and shall be deemed to be in the custody of the law and subject only to the orders and decrees of the Courts of the United States having jurisdiction thereof." Section 934, Vol. 6, p. 766, Federal Statutes Annotated.

In Clark v. Protection Ins. Co., 1 Story (U. S.) 134, it is said, "the established doctrine is that notwithstanding the forfeiture, the property remains in the owner until it is actually seized by the Government and then by the seizure the title of the Government relates back to the time of the forfeiture." When therefore the cigars in question were seized by the Government the title of the latter related back to the time when they were first "offered for sale" and before such sale was or could be consummated. The plaintiff never had any legal title to them. The moment the cigars were removed from the factory of Meyer where they were made, without being properly marked, stamped and branded, they became forfeited, and by the seizure the title of the Government related back to that time.

Plaintiff apparently relies upon Wessels v. Beeman, 87 Mich. 481. In that case it is said (p. 490): "There was no testimony introduced and none offered to show that the United States had taken any steps to enforce the forfeiture, although its revenue officers were acquainted with the facts." In the case at bar however steps were taken to enforce the forfeiture and the cigars were actually seized by the Government. The language therefore in the case last cited and upon which plaintiff's counsel apparently relies, is not in point. It is as follows: "We do not think that third parties can set up the illegality of a sale in violation of the revenue laws to defeat an action brought against such third persons for intermeddling with the property or converting it to their own use, when neither party to the contract has repudiated it and the contract has been fully executed." This has no application under the facts in the case at bar.

After the cigars were seized and after Meyer, the manufacturer, had been arrested he went to one Salomon to obtain bail. Salomon thereafter acted as Meyer's agent. He paid for Meyer the cost of an appraisement made by the Collector, and the cost of publication of a notice by the Collector to the effect that "any person claiming ownership of said cigars must appear and file claim within thirty days from the date of this notice." It was not the plaintiff, but Meyer, accompanied by his agent Salomon, who appeared and claimed the cigars. And it was Meyer acting through Salomon who compromised the matter with the Government and paid the fine of $200 with costs and expenses. When the compromise was accepted by the Government, notice of the acceptance was sent to Meyer, and it was Salomon acting for Meyer and not for plaintiff, so far as appears, who when the cigars had been put in proper condition for sale notified not plaintiff but Meyer to come and get them. Before Meyer did so the defendant attached them as Meyer's property in the hands of Salomon.

We are of opinion the plaintiff has failed to show any title to or right of possession of the cigars in controversy. The judgment of the Municipal Court is reversed.

*Reversed.*